# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

JUSTIN SPROULE, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

SANTA FE NATURAL TOBACCO COMPANY, INC., and REYNOLDS AMERICAN INC.,

    Defendants.

No.

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, Justin Sproule, individually, and on behalf of all others similarly situated in the United States, by and through the undersigned counsel, files this Class Action Complaint, and alleges against Defendants, Santa Fe Natural Tobacco Company, Inc. and Reynolds American Inc., as follows:

## INTRODUCTION

1. Defendants manufacture, market, and sell Natural American Spirit cigarettes ("American Spirits"). Defendants' product labeling and advertising describes these cigarettes as "Natural," "Additive Free," "100% Additive Free," "Organic," and an "unadulterated tobacco product."[1] These terms are intended to <u>suggest</u> that American Spirits are healthier, safer, and present a lower risk of tobacco-related disease than other tobacco products. Defendants, however, have no competent or reliable scientific evidence to back their labeling and advertising claims. Defendants' claims are patently deceptive, especially in today's market, where these terms have a

---

[1] https://www.sfntc.com/site/ourCompany/sfntc-story/ (last visited Aug. 28, 2015).

potent meaning for the health-and environmentally-conscious consumer. Moreover, as the FDA recently determined, American Spirits are in fact "adulterated." Using these deceptive terms, Defendants are able to successfully price American Spirits higher than other competitive cigarette brands.

2.      Plaintiff and the Class smoke American Spirits because they have been deceived by Defendants' claims, labels and advertising into regarding them as safer than other cigarettes. Individually and on behalf of all those similarly situated, Plaintiff seeks redress for Defendants' fraudulent and deceptive trade practices.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff, Justin Sproule, is an individual residing in the Southern District of Florida, and is a citizen of the State of Florida. Plaintiff purchased Natural American Spirit cigarettes during the Class Period. Plaintiff incurred losses and damages as a result of the activities alleged herein. Plaintiff has suffered injury-in-fact for which Plaintiff is entitled to seek monetary damages.

4.      Defendant Santa Fe Natural Tobacco Company, Inc. ("SFNTC") is a New Mexico corporation. Its principal place of business is One Plaza La Prensa, Santa Fe, New Mexico 87507. SFNTC manufactures, promotes and sells Natural American Spirit cigarettes. Santa Fe, a subsidiary of Reynolds American Inc., has been and still is engaged in the business of manufacturing, promoting and selling American Spirits throughout the United States.

5.      Defendant Reynolds American Inc. is a North Carolina corporation. Its principal place of business is 401 North Main Street, Winston-Salem, North Carolina 27101. Reynolds American is severally, jointly, and vicariously liable for the actions of SFNTC.

6. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because a member of the Plaintiff Class is a citizen of Florida, Defendants are citizens of New Mexico and North Carolina, there are currently 100 or more class members, and the aggregate amount in controversy will exceed $5,000,000.

7. The Court has personal jurisdiction over all Defendants because they are authorized to do business and in fact do business in the Southern District of Florida and have sufficient minimum contacts with this District, and each Defendant otherwise intentionally avails itself of the markets in this State through the promotion, marketing and sale of American Spirits to render the exercise of jurisdiction by this Court permissible under Florida law and the U.S. Constitution.

8. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, a substantial part of the property that is the subject of this action is situation in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### A. The Natural American Spirit Cigarette

9. According to Reynolds American, SFNTC manufactures the "fastest growing super-premium cigarette brand[:]"[2] Natural American Spirit., also called American Spirits.

10. SFNTC, created in 1982, holds itself out as a "natural tobacco" company.

11. SFNTC's first product was loose tobacco, which were called "The Original American Spirit" cigarette.[3]

---

[2] http://www.sec.gov/Archives/edgar/data/1275283/000119312513050521/d449654d10k.htm (last visited Aug. 30, 2015).
[3] https://www.sfntc.com/site/ourCompany/sfntc-story/ (last visited Aug. 30, 2015).

12. When describing the company's creation, a founding member remarked, "The initial proposal was to produce a natural tobacco product, an unadulterated tobacco product."[4]

13. SFNTC advertises and labels its cigarettes as "100% natural."

14. SFNTC boasts that "no other cigarette company has positioned itself as 100% natural."

15. SFNTC also represents that its cigarettes are "Natural," "Additive Free," and "Organic."

16. SFNTC's product development and marketing scheme targets smokers inclined to buy natural, organic products in the belief that such products are healthier or more environmentally responsible SFNTC exploits these consumer attitudes in various ways. One SFNTC advertisement, for example, reads:

> We make our cigarettes with 100 percent additive-free tobacco, including styles with 100 percent U.S. grown tobacco, and with certified organic tobacco. Our blenders create the highest quality tobacco blends and only use two ingredients: whole leaf tobacco and water.[5]

As another example, SFNTC sent a direct mailing advertisement depicting a rain drop over a tobacco leaf, that read:

> "TOBACCO + WATER THAT'S ALL[,] For over 30 years we've created premium, whole leaf, <u>100% additive-free</u> natural tobacco products using only what the earth has given us."

SFNTC also includes in its advertisements alleged smoker testimonials such as: "I only purchase organic products at the grocery store and obviously I would only smoke a cigarette made with organic tobacco."

---

[4] <u>https://www.sfntc.com/site/ourCompany/sfntc-story/</u> (last visited Aug. 30, 2015).
[5] <u>https://www.sfntc.com/site/ourProduct/overview/</u> (last visited Aug. 30, 2015).

17. As a result of this deceptive marketing campaign, Natural American Spirit sales increased by 86 percent from 2009 to 2014, as compared to an overall 17 percent decline in cigarette sales in the United States over the same time period.

18. American Spirits have become one of the top 10 best-selling cigarette brands even though it is priced higher than most other competitive brands.

B.  SFNTC's False and Deceptive Advertising

19. The marketing for American Spirits is the most deceptive of any major U.S. cigarette brand currently on the market.[6]

20. American Spirits consumers, like Plaintiff, expect that the cigarette is healthier than other cigarettes. These consumers associate Defendants' advertising terms such as "natural," "organic," and "additive free" with reduced risk.

21. Tobacco company studies confirm these consumer associations. For example, when asked the implication of a natural cigarette compared to one with additives, focus group members thought that the absence of artificial additives assured a lower health hazard and longevity. In a 1983 study, participants described chemicals as undesirable or "not good for you." A 1996 study viewed natural as purer. A 1998 study found that natural meant less harmful.

22. SFNTC deceptively exploits its insistent marketing message of a safer cigarette in other ways. It sells its cigarettes in health food stores; and it accompanies its cigarettes with literature from "America's leading natural foods teacher" who claims that the cigarettes are medicinal and that Native Americans smoke such additive free cigarettes without developing cancer.

---

[6] "FDA Warning about Deceptive Marketing of Natural American Spirit Cigarettes, Other Brands Is Critically Important to Protect Consumers" available at:  http://www.prnewswire.com/news-releases/fda-warning-about-deceptive-marketing-of-natural-american-spirit-cigarettes-other-brands-is-critically-important-to-protect-consumers-300134309.html (last visited Aug. 30, 2015).

23. SFNTC's intensive and successful advertising of American Spirits as natural, organic, wholesome and additive-free is overwhelming. The consuming public precisely thinks: "natural" and "organic" cigarettes are healthier and safer than cigarettes containing chemicals. In a 1997 interview, American Spirits smokers thought that SFNTC "cares more about its customers" than other cigarette companies.

24. SFNTC's claims that its cigarettes are natural and "100% Additive Free" are deceptive and fraudulent. First, SFNTC adds ammonia to its cigarettes to maximize the amount of freebase nicotine in its cigarettes and thus deliver more nicotine to the smoker. The more freebase nicotine, the more addictive the cigarette. American Spirits contain extremely high levels of freebase nicotine 36 percent, compared to Camel's 2.7 percent, Winston's 6.2 percent, and Marlboro's 9.6 percent.[7] Secondly, SFNTC adds menthol and other flavors to its cigarettes. Menthol and flavoring agents, like ammonia, are chemical "additives." Mentholated, flavored, and ammoniated cigarettes are particularly insidious because they make people more likely to start smoking, lead to greater nicotine dependence, and decrease the rate of quitting.

   **C.   Natural American Cigarettes are Adulterated**

25. The Family Smoking Prevention and Tobacco Control Act ("Tobacco Control Act") regulates cigarettes and other tobacco products.

26. Pursuant to the Tobacco Control Act, a tobacco product is considered a "modified risk tobacco product" under section 911(b)(2)(A)(i) if its label, labeling, or advertising explicitly or implicitly represents that: (1) the product presents a lower risk of tobacco-related disease or is less harmful than one or more other commercially marketed tobacco products; (2) the product or

---

[7] Pankow, J., Barsanti, K., & Peyton, D. (2003) Fraction of Free-Base Nicotine in Fresh Smoke Particulate Matter from the Eclipse "Cigarette" by 1H NMR Spectroscopy. Chemical Research in Toxicology, 16(1): 23-27.

its smoke contains a reduced level of a substance or presents a reduced exposure to a substance; or (3) the product or its smoke does not contain or is free of a substance.

27. Under section 911(a), modified risk tobacco products cannot be introduced or delivered into interstate commerce absent prior FDA approval.

28. To obtain approval for a modified risk tobacco product, the applicant must, among other things, submit underlying scientific information relating to the research findings conducted, supported, or possessed by the tobacco product manufacturer relating to the effect of the product on tobacco-related diseases and health-related conditions, including information both favorable and unfavorable to the ability of the product to reduce risk or exposure and relating to human health.  Tobacco Control Act section 911(d).

29. Next, the FDA must determine that the applicant has demonstrated, among other things, that the modified risk tobacco product promotes the public health; the scientific evidence that is available without conducting long-term epidemiological studies demonstrates that a measurable and substantial reduction in morbidity or mortality among individual tobacco users is reasonably likely in subsequent studies; and the product as actually used by consumers will not expose them to higher levels of other harmful substances compared to the similar types of tobacco products then on the market unless such increases are minimal and the reasonably likely overall impact of use of the product remains a substantial and measurable reduction in overall morbidity and mortality among individual tobacco users.  Tobacco Control Act section 911(g).

30. Introducing or delivering a modified risk tobacco product into interstate commerce without FDA approval means that the product is adulterated.  Tobacco Control Act section 902(8).

31. On August 27, 2015, the FDA issued a warning letter to SFNTC because American Spirits are adulterated.  The August 27, 2015 letter is attached hereto as Exhibit 2.

32. According to the FDA, American Spirits are adulterated because they are modified risk tobacco products, distributed in interstate commerce, representing that they are less harmful than other cigarettes, all without FDA approval.

33. Stated simply, SFNTC presented no scientific evidence supporting their health-related representations.

34. Because SFNTC sells modified risk tobacco products absent FDA authorization, it is in violation of the Tobacco Control Act.

   **D.   SFNTC Consciously or Recklessly Disregarded the Rights and Safety of Consumers**

35. SFNTC knows that American Spirits' advertising and packaging campaign is deceptive or recklessly disregarded this fact, and continues to market to consumers, including Plaintiff and the Class, without disclosing the truth of its deceptive trade practices.

36. SFNTC's conduct is with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiff and the Class, thereby entitling Plaintiff and the Class to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future.

## CLASS ACTION ALLEGATIONS

37. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, [Plaintiff] brings this action on behalf of himself and a proposed nationwide class ("Class") initially defined as: *All persons who purchased Natural American Spirit cigarettes for personal consumption from the first date Santa Fe Natural Tobacco Company placed its Natural American Spirit cigarettes into the stream of commerce through at least August 27, 2015.* Collectively, all these persons will be referred to as "Plaintiffs" or "Plaintiff Class."

38. Excluded from the Plaintiff Class are: Defendants and any entity or entities in which Defendants have a controlling interest; any entity or entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; all persons that properly execute and timely file a request for exclusion of the Class.

39. Plaintiffs reserve the right to modify the Class definitions after discovery and at any time up to and including trial.

40. The action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a)(1-4) and (b)(1).

41. The Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the Class members is presently unknown to Plaintiffs, but it is believed that Class members number at least in the thousands. The identity of Class members is ascertainable. Class members may be informed of the pendency of this Class action by a combination of direct mail and public notice, or other means.

42. Common questions of fact and law exist as to all members of the Class, which predominate over questions affecting only individual members of the Class. These include, but are not limited to the following:

   a. Whether Defendants engaged in unlawful, unfair or deceptive business practices alleged herein;

   b. Whether Defendants made unlawful and misleading representations or material omissions with respect to Natural American Spirit cigarettes;

      c.      Whether Defendants represented that Natural American Spirit cigarettes have characteristics, uses, benefits or qualities that they do not have;

      d.      Whether Defendants' unlawful, unfair and deceptive practices harmed Plaintiffs and the Class;

      e.      Whether Plaintiffs and the Class have been damaged by the unlawful actions of the Defendants and the amount of damages to the Class;

      f.      Whether Defendants were unjustly enriched by its deceptive practices;

      g.      Whether Court-supervised medical monitoring is appropriate under the circumstances, including equitably mandating Defendants to create and/or pay the costs of smoking cessation programs;

      h.      Whether punitive damages should be awarded.

43.      Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs purchased American Spirits that Defendants' deceptively promoted, sold and distributed. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and for all other class members. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and each Class Member sustained similar injuries arising out of Defendants' conduct in violation of Florida law.

44.      The injuries of each Class member were caused directly by Defendants' wrongful conduct. The factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

45. Plaintiff is an adequate representative of the Class because Plaintiff is a Class member and Plaintiff's interests do not conflict with the interests of the members of the Class that Plaintiff seeks to represent. Plaintiff is represented by experienced and able counsel who have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Plaintiff Class. Plaintiff and Plaintiff's counsel can fairly and adequately protect the interests of the members of the Plaintiff Class.

46. The class action is the best available method for the efficient adjudication of this litigation because individual litigation of the Plaintiff Class claims would be impractical and individual litigation would be unduly burdensome to the courts. Individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. As the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

## CLAIMS FOR RELIEF

## COUNT I

**(Violation of the Florida Deceptive and Unfair Trade Practices Act
(Fla. Stat. sec. 501.201 et seq.)**

47. Plaintiff repeats and realleges each allegation contained above, as if fully set forth herein, and further states:

48. The express purpose of FDUTPA is to "protect the consuming public...from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

49. Section 501.204(1), Fla. Stat. declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

50. Selling, distributing, or introducing American Spirits cigarettes in interstate commerce are "consumer transaction[s]" in the scope of FDUPTA.

51. Plaintiff is a "consumer" as defined by §501.203, Fla. Stat.

52. SFNTC's American Spirits are goods within the meaning of FDUTPA and SFNTC is engaged in trade or commerce within the meaning of FDUTPA.

53. SFNTC's unfair and deceptive practices are likely to mislead – and have misled – reasonable consumers, such as Plaintiff and members of the Class.

54. SFNTC has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

55. Specifically, SFNTC has represented that American Spirits are "Additive Free," "100% Additive Free," "Natural" and "Organic," when in fact, the cigarettes are engineered to deliver a higher level of nicotine, and/or contain additives and flavorings.

56. Plaintiff and the Class have been aggrieved by SFNTC's unfair and deceptive practices in violation of FDUPTA, in that they purchased and consumed SFNTC's deceptive product.

57. Plaintiff and the Class, as reasonable consumers, relied on SFNTC to honestly and accurately represent the true nature of American Spirits.

58. SFNTC has deceived reasonable consumers, like Plaintiff and the Class, into believing American Spirits were something they were not: healthier and safer than other cigarettes.

59. The knowledge required to discern the true nature of American Spirits is beyond that of the reasonable consumer.

60. Plaintiff and the Class have sustained damages as a direct and proximate result of SFNTC's tortious conduct.

61. Pursuant to §§501.211(2) and 501.2105, Fla. Stat., Plaintiff and the Class demand damages, attorney's fees and costs and any other equitable and legal relief to which they may be entitled.

## COUNT II

## FRAUD

62. Plaintiff repeats and realleges paragraphs 1-44 as if fully set forth herein, and further states:

63. SFNTC has fraudulently and falsely represented that Natural American Spirit cigarettes are "Additive Free," "100% Additive Free," "Natural" and "Organic."

64. SFNTC knowingly made false representations or material omissions regarding the safety (or lack thereof), ingredients, and engineering of the Natural American Spirit cigarettes.

65. At all relevant times, SFNTC had a duty to disclose the nature and extent of what it knew regarding the safety (or lack thereof), ingredients, and engineering of the Natural American Spirit cigarettes.

66. SFNTC failed to reveal this information to consumers, including Plaintiff and the Class.

67. At all relevant times, Plaintiff and the Class were not aware that SFNTC's representations were false, and they were not aware of the material information SFNTC was concealing.

68. Plaintiff and other reasonable consumers, including the Class members, reasonably relied on SFNTC's representations set forth herein, and, in reliance thereon, purchased American Spirits.

69. Plaintiff and Class members justifiably relied on SFNTC's representations.

70. But for SFNTC's representations, Plaintiff and Class members would not have purchased American Spirits.

71. As a direct and proximate result of SFNTC's knowingly false representations, Plaintiff and members of the Class were induced to purchase American Spirits, and have suffered damages, to be determined at trial, in that they have been deprived of the benefit of their bargain in that they bought a product that was not what it was represented to be.

72. Plaintiff seeks all available equitable and legal remedies, including damages and costs as a result of SFNTC's fraud.

## COUNT III

## NEGLIGENT MISREPRESENTATION

73. Plaintiff repeats and realleges paragraphs 1-44 as if fully set forth herein, and further states:

74. SFNTC has negligently represented that Natural American Spirit cigarettes are "Additive Free," "100% Additive Free," "Natural" and "Organic."

75. SFNTC's advertising and labeling campaigns misrepresent material facts to the public, including Plaintiff and the Class about American Spirits.

76. SFNTC markets American Spirits directly to consumers; the cigarettes are sealed and are not changed from the time they leave SFNTC's possession until they arrive in stores to be sold to consumers.

77. SFNTC knows its misstatements are material to the reasonable consumer and Defendant intends for consumers to rely upon the misstatements when choosing to purchase American Spirits.

78. SFNTC has failed to adequately inform consumers, including Plaintiff and the Class, that American Spirits are not the modified risk tobacco product that SFNTC passes them off as. In addition, SFNTC has failed to adequately inform consumers of its freebasing and chemical additive procedures and that its advertising and labeling campaign is false.

79. SFNTC knew or should have known that its misstatements would materially affect Plaintiff's and the Class members' decisions to purchase American Spirits.

80. Plaintiff and other reasonable consumers, including the Class members, reasonably relied on SFNTC's representations set forth herein, and, in reliance thereon, purchased American Spirits.

81. Plaintiff and Class members justifiably relied on SFNTC's representations.

82. But for SFNTC's representations, Plaintiff and Class members would not have purchased American Spirits.

83. As a direct and proximate result of SFNTC's misrepresentations, Plaintiff and members of the Class were induced to purchase American Spirits, and have suffered damages, to be determined at trial, in that they have been deprived of the benefit of their bargain in that they bought a product that was not what it was represented to be.

84. Plaintiff seeks all available remedies, damages, and awards against SFNTC as a result of SFNTC's negligent misrepresentations.

## COUNT IV

## UNJUST ENRICHMENT

85. Plaintiff repeats and realleges paragraphs 1-44 as if fully set forth herein, and further states:

86. As a result of SFNTC's unlawful and deceptive actions described above, SFNTC was enriched as the expense of Plaintiff and the Class.

87. Under the circumstances, it would be against equity and good conscience to permit SFNTC to retain the ill-gotten benefits it received from Plaintiffs and the Class.  Thus, it would be unjust and inequitable for SFNTC to retain the benefit without restitution to Plaintiffs and the Class for the monies paid to SFNTC for the American Spirits.

## COUNT V

## INJUNCTIVE RELIEF – MEDICAL MONITORING

88. Plaintiff repeats and realleges paragraphs 1-44 as if fully set forth herein, and further states:

89. As alleged above, SFNTC deceived Plaintiff and the Class into thinking that American Spirits are healthier, safer and less carcinogenic than alternative cigarettes.

90. SFNTC has exposed consumers, including Plaintiff and the Class to a product that is addictive and disease causing.

91. Plaintiff and Class members switched to smoking American Spirits because they thought that a "Natural," "Organic," and "Additive Free" cigarette, as SFNTC deceptively advertises, will help them quit smoking or is a healthy alternative to alternative cigarettes.

92. Smoking an addictive and potentially disease-causing product makes medical examinations and smoking cessation programs reasonable and necessary.

93. The extent of the significantly increased risk and the catastrophic nature of the illnesses to which the Defendants have exposed the Plaintiff and the Class require such medical monitoring program and/or smoking cessation programs for Plaintiff and the Class.

94. Plaintiff, on behalf of himself and similarly situated Class members, invokes the equitable and injunctive power of the Court to require Defendants to fund a Court-supervised medical monitoring and smoking cessation programs because of the significantly increased risks of injury attributable to smoking American Spirits.

95. Florida recognizes Plaintiff and Class members' rights to medical monitoring as a cognizable cause of action. *See Petito vs. A.H. Robbins Co., Inc.*, 750 So.2d 103 (Fla. 3rd DCA

1999). Such relief is available notwithstanding the absence of the manifestations of a present physical injury or symptomatic disease.

96. Failure to establish a medical monitoring and smoking cessation programs will result in the infliction of immeasurable and unconscionable personal injuries which are preventable.

## COUNT VI

## AIDING AND ABETTING, VICARIOUS LIABILITY

### (As to Reynolds American)

97. Plaintiff repeats and realleges paragraphs 1-44, 46-60, 62-71, 84-86, and 88-95 as if fully set forth herein, and further states:

98. Defendant Reynolds American is the parent holding company of SFNTC, an operating subsidiary.

99. Reynolds American purchased SFNTC in 2002. Reynolds American considers SFNTC an operating segment of Reynolds American: SFNTC's assets are considered Reynolds American assets.

100. Reynolds American essentially controls the financial operations of SFNTC, as well as SFNTC's business initiatives and capital expenditures.

101. SFNTC employees are considered Reynolds American employees; board members between the two Defendants overlap; Reynolds American controls pricing for its subsidiaries; Reynolds American owns its operating subsidiaries executive offices and manufacturing facilities; Reynolds American reports SFNTC's financial statements in its SEC filings; Reynolds American requires its operating subsidiaries, such as SFNTC, to make additional capital investments to support the expansion of another Reynolds American subsidiary's brand: VUSE; in short,

SFNTC's financial well-being directly affects Reynolds American's financial well-being, and Reynolds American exercises control over SFNTC's corporate decision-making.

102. Indeed, Reynolds American's 2015 10K SEC filing, it reported that SFNTC's "recent packaging upgrade contributed to increased interest from [] adult tobacco consumers."

103. SFNTC is not independent of, but rather, is tied to Reynolds American.

104. Since the 2002 acquisition, Reynolds American has aided and abetted SFNTC in the deceptive and fraudulent trade practices described above.

105. Given this relationship and the companies' interconnectedness, Reynolds American is vicariously liable for any and all of SFNTC's actions.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class members, seek the following relief against all Defendants:

  A. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, and finding that Plaintiff is a proper representatives of the Class;

  B. Actual and/or compensatory damages and/or exemplary damages and/or the recovery of civil penalties as provided under common law and by Fla. Stat. § 501.2075 and/or an award equal to the amount by which the Defendants have been unjustly enriched;

  C. An order requiring medical monitoring and smoking cessation programs;

  D. An order awarding pre-judgment and post-judgment interest;

  E. The costs of this proceeding and attorneys' fees, as provided by Fla. Stat. § 501.2105;

    F.      Punitive damages in an appropriate amount;

    G.      Any further compensatory, injunctive, equitable or declaratory relief including refunds as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: September 30, 2015

Respectfully submitted,

s/Scott P. Schlesinger
Scott P. Schlesinger (FBN: 444952)
Jonathan R. Gdanski (FBN: 0032097)
Jeffrey L. Haberman (FBN: 98522)
SCHLESINGER LAW OFFICES, P.A.
1212 SE Third Avenue
Ft. Lauderdale, FL 33316
Tel: 954-320-9507
Fax: 954-320-9509
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com
jgdanski@schlesingerlaw.com

*Attorneys for Plaintiff and the Class*